IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC., | ) | Case No. 1:16-CV-1418 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| v. | ) | |
| | ) | |
| BRIANNE BOOTH, et. al., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER ON PLAINTIFF'S** |
| Defendants. | ) | **MOTION FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |
| | ) | |

**I.    Introduction**

Columbia Gas Transmission, LLC ("Columbia") instituted this action to obtain an order

of condemnation against defendant Medina County landowners ("Medina Landowners").   ECF

Doc. No. 793.  Columbia claims a right to condemn easements beneath defendants' property for

the storage of natural gas it holds for resale. Columbia seeks partial summary judgment, claiming

that there is no genuine dispute as to any material fact and that it is entitled to the requested order

of condemnation as a matter of law pursuant to the Natural Gas Act ("NGA"), 15 U.S.C.

§717f(h), and Federal Rule of Civil Procedure 71.1.[1]  ECF Doc. No. 794, Page ID# 1436.

Columbia also seeks an order awarding it immediate possession of the gas storage easements.

ECF Doc. No. 794.  Columbia asserts that if partial summary judgment is granted, only the issue

of how much it must pay in order to justly compensate defendants would remain.  Columbia has

supplemented its motion for partial summary judgment with additional Rule 56 evidence.  ECF

---

[1] Columbia also filed a motion to appoint a commission to determine just compensation (Doc. 795) which
will be decided in a separate order.

Doc. No. 815.  The Medina Landowners oppose Columbia's motion, arguing (1) that Columbia is not entitled to immediate possession of defendants' properties and (2) that Columbia is not entitled to an order of condemnation because it failed to make a "good faith" offer to acquire easements prior to filing the condemnation complaint.[2]  ECF Doc. Nos. 801, 818.

Columbia's motion for partial summary judgment will be GRANTED IN PART; Columbia has demonstrated that there is no genuine dispute as to any material fact, and it has shown a right as a matter of law to condemn easements for gas storage under defendants' properties.  Columbia's motion for an order of immediate possession of the easements will be DENIED.  The case will proceed in order to determine the compensation Columbia owes defendants for the easements.

## II.   Procedural History

This matter was transferred from the Southern District of Ohio after the parties' claims were severed from *Wilson et al v. Columbia Gas Transmission, LLC*, Case No. 2:12cv01203. ECF Doc. 791.  The *Wilson* plaintiffs filed a class action complaint against Columbia asserting that Columbia was improperly storing natural gas under the land of the putative class members without having acquired storage easements and without paying just compensation.  *Wilson,* 2:12cv01203, ECF Doc. No. 2, Page ID# 10.  Columbia later filed an amended counterclaim in *Wilson* asserting a right to condemnation against the Medina Landowners and other landowners

---

[2] The Medina Landowners also argue that Columbia's motion for summary judgment should be denied because the Medina Landowners filed a motion to dismiss in this matter (Doc. 798), asserting that Columbia failed to invoke this Court's subject matter jurisdiction in its attempted condemnation claims. However, after briefing was complete on the motion for summary judgment, but prior to this order, this Court overruled the Medina Landowners' Motion to Dismiss.  Doc. 807.  As such, that argument is now moot. The Medina Landowners also argue that Columbia failed to present evidence required by FRCP 56(c)(1).  That argument was mooted by Columbia's uncontested supplemental filing.

that Columbia brought into the case.[3]  *Wilson,* 2:12cv01203, ECF Doc. No. 275.  Columbia and

the Medina Landowners jointly requested the severance and transfer of their claims to this

district.  ECF Doc. No. 789.  The parties' claims were severed, transferred and recaptioned here

as *Columbia Gas, LLC v. Booth, et. al.*, 1:16cv01418.  Columbia then filed the current amended

complaint.  ECF Doc. No. 793.  Columbia contemporaneously filed this motion for partial

summary judgment. ECF Doc. No. 794.   It also moved for the appointment of a commission

which would determine just compensation to be paid for the easements. ECF Doc. No. 795.

### III.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a). The court must view all evidence, and draw all reasonable inferences

therefrom, in favor of the non-moving party. *Wheat v. Fifth Third Bank,* 785 F.3d 230, 237 (6th

Cir.2015). Moreover, "the trial court no longer has a duty to search the entire record to establish

that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472,

1479-80 (6th Cir.1989) (*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir.

1988)). The non-moving party is under an affirmative duty to point out specific facts in the

record that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4

(S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome

summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Id.*

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as

---

[3] Columbia notified the Medina Landowners that it may have been storing gas underneath their properties after the complaint was filed in *Wilson* and it is undisputed that Columbia referred to the *Wilson* case in its letter to the landowners.

3

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

## IV.    Factual Findings

There is no genuine dispute regarding each of the following material facts:

1.       Columbia operates an extensive interstate natural gas transportation and storage system.  As an integral part of these activities, Columbia administers underground natural gas storage fields.  Columbia stores natural gas in underground storage fields during summer months for use in the winter when cold weather causes market demand to exceed the capacity of production and transmission pipelines.[4]

2.       Columbia is a Delaware corporation and a successor to the Ohio Fuel Gas Company.[5]

3.       In 1958, the Ohio Fuel Gas Company applied for and was granted a certificate of public convenience and necessity from the Federal Energy Regulatory Commission ("FERC") for the operation and maintenance of the Medina Storage Field.[6]

4.       In 1970, upon merger with the Ohio Fuel Gas Company, Columbia succeeded to the ownership of and entitlement to the 1958 FERC certificate for the Medina Storage Field.

5.       In 1987, FERC again granted Columbia a certificate of public convenience and necessity for the operation and maintenance of the Medina Storage Field.  This time, the FERC certificate included a map identifying the reservoir and protective boundaries of the storage field.[7]

6.       The defendants are owners of parcels of land located within the 1987 FERC-certificated boundaries of the Medina Storage Field.[8]

--------------------------------

[4] *Columbia Gas Transmission Corp. v. Exclusive Gas Storage Easement*, 776 F.2d 125, 125-26 (6th Cir. 1985).

[5] ECF Doc. No. 815, Exhibits 2 and 4.

[6] Id., at Exhibit 1 (1958 certificate of public convenience and necessity issued by the Federal Power Commission to The Ohio Fuel Gas Company for the construction and operation of the Medina Storage Field).

[7] Id., at Exhibit 3 (1987 FERC certificate).

[8] ECF Doc. No. 815, Exhibit 5 (The Declaration of Katie L. Monroe, Columbia's Manager, Land Management including Exhibits A and B to Monroe's Declaration - two maps of the Medina Storage

4

7.     Columbia has been unable to agree with the landowner defendants as to the compensation to be paid for the Storage Easements at issue and has not been able to acquire the easements by contract.[9]

## V.     Analysis

Columbia moves for: (1) an order of condemnation granting it the right to own gas storage easements beneath defendants' properties, and (2) an order awarding Columbia immediate possession the easements.  ECF Doc. No. 794, Page ID# 1436.

### A.  Whether Columbia Has a Right to Condemn the Property

Congress enacted the NGA, 15 U.S.C. § 717 *et. seq.*, in 1938.  The NGA authorizes private companies engaged in the interstate transportation of natural gas to use eminent domain power to take property for the construction of gas transportation facilities.  It is undisputed that the NGA governs Columbia's interstate natural gas operations.  Columbia asserts that it meets the NGA's prerequisites to condemn easements for gas storage beneath the Medina Landowner's properties.  The NGA grants the right of eminent domain to FERC certificate holders:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United

---

Field); Exhibit 6 (October 18, 2016, hearing transcript in which counsel for the Medina Landowners' admitted that the Medina Landowners' properties lies within the boundaries of the Medina Storage Field.

[9] ECF Doc. No. 815, Exhibits C and D to the Monroe Declaration (Exhibit 5)(comprising written offer letters to the landowner defendants from Columbia seeking to pay $250 compensation in exchange for an underground natural gas storage easement and letters from opposing counsel to Columbia rejecting the offer on behalf of the landowners); Exhibit 7 (Declaration of Jodie H. Lawson including Exhibit A to the Lawson Declaration).  See also defendant's answer to Columbia's Amended Complaint in Condemnation, ECF No. 808 at 2 ("Landowners admit that they do not agree on the unsubstantiated offer of compensation made to them by Columbia.").

> States for the district in which such property may be located, or in the State
> courts. The practice and procedure in any action or proceeding for that purpose in
> the district court of the United States shall conform as nearly as may be with the
> practice and procedure in similar action or proceeding in the courts of the State
> where the property is situated: *Provided,* That the United States district courts
> shall only have jurisdiction of cases when the amount claimed by the owner of the
> property to be condemned exceeds $3,000.

15 U.S.C. §717f(h).   The NGA has been found to be "sufficiently broad" to include the creation

of underground natural gas storage facilities.  *Columbia Gas Transmission Corp. v. Exclusive

Gas Storage Easement*, 776 F.2d 125, 128 (6th Cir. 1985).

Columbia has demonstrated that it holds a FERC certificate for the storage of natural gas

in the Medina Storage Field which is located beneath the Medina Landowners' properties.  See

ECF Doc. Nos. 815-1, 815-3, 815-5, 817.  Columbia has also submitted evidence that it has been

unable to acquire the easement rights to store gas beneath the Medina Landowners' properties by

contract or otherwise to agree on compensation.  Columbia has shown that it made a cash offer

for an easement of $250.00 per lot to each landowner.  See Answer to Amended Complaint ECF

Doc. No. 808 at ¶3 ("Landowners admit that they do not agree on the unsubstantiated offer of

compensation made to them by Columbia."); See also ECF Doc. Nos. 815-5 at ¶¶ 8-9, 815-6,

815-7, 815-9.  The Medina Landowners have not disputed any of these facts.

To prevail, Columbia must not only show that it has complied with NGA's requirements

but also the demands of Rule 71.1, Fed. R. Civ. P., which controls federal court eminent domain

actions.   Rule 71.1(c)(2) requires a complaint for condemnation by eminent domain to contain

five elements: (A) a short and plain statement of the authority for the taking, (B) the uses for

which the property is to be taken, (C) a description sufficient to identify the property, (D) the

interests to be acquired, and (E) for each piece of property a designation of each defendant who

has been joined as an owner of the property or an interest in it.  Rule 71.1 also sets other

requirements for the form and substance of the pleading and notice to property owners.  The

6

record shows that Columbia has complied with the requirements of Rule 71.1. See ECF Doc. No. 793, Amended Complaint in condemnation. See e.g., *Wilson*, 2:12cv1203 at ECF Doc. Nos. 303, 315, 357.

The Medina Landowners attempt to defeat Columbia's right to condemnation by arguing that Columbia has not met Ohio eminent domain law requirements. ECF Doc. No. 801, Page ID# 1505. The landowners contend Columbia had a duty to make a "good faith" offer to purchase the easements, and they assert Columbia's $250-per-parcel offer was not made in good faith. ECF Doc. No. 818, Page ID# 1769. Specifically, the landowners assert that Columbia's offer was insufficient because it was not based on the appraisal required by §163.04(C) of the Ohio Revised Code. In addition, they contend they have the right to recover costs and attorney's fees under §163.21(C)(1), Ohio Rev. Code, in the event of a low offer.[10] The Medina Landowners' argument prompts a two-fold inquiry: (1) does the NGA imply a requirement to negotiate in "good faith;" and, if so, (2) does the NGA require compliance with Ohio condemnation law, specifically §§ 163.04(C) and 163.21 Ohio Rev. Code.

NGA §717f(h) does not mention the term good faith, thus, the court concludes that there is no express "good faith" requirement in the statute. However, some federal courts have

---

[10] The Ohio Revised Code provides in pertinent part:

> An agency may appropriate real property only after the agency obtains an appraisal of the property and provides a copy of the appraisal to the owner….The agency shall provide the copy or summary of the appraisal to an owner, guardian, or trustee at or before the time the agency makes its first offer to purchase the property.

ORC §163.04(C)

> [W]hen an agency appropriates property and the final award of compensation is greater than one hundred twenty-five per cent of the agency's good faith offer for the property…the court shall enter judgment in favor of the owner, in amounts the court considers just, for all costs and expenses, including attorney's and appraisal fees, that the owner actually incurred.

ORC §163.21.

inferred such a requirement from the statutory language.  *See, e.g., U.S.G. Pipeline Co. v. 1.74 Acres in Marion County,* 1 F.Supp.2d 816, 822 (E.D.Tenn.1998)(the district court held a hearing to determine whether the offers were made in good faith); *Transwestern Pipeline Co. v. 17.19 Acres of Property,* 550 F.3d 770, 776 (9th Cir.2008) (noting that "[i]n addition to showing an inability to agree on a price with the landowner, [the plaintiff] must also establish that it engaged in good faith negotiations with the landowner."); *Florida Gas Transmission v. 9.854 Acre,* No. 96–14083 CIV, 1998 WL 2018164 (S.D.Fla. June 15, 1998) (a single written offer to purchase easement met good faith requirements); *Transcontinental Gas v. 118 Acres of Land,* 745 F.Supp. 366 (E.D.La.1990).

More recent decisions examining the plain language of the Act have found no such requirement. *See, e.g., Maritimes and Northeast Pipeline v. Decoulos,* 146 Fed.Appx. 495 (1st Cir.2005); *Hardy Storage v. Property Interests Necessary to Conduct Gas Storage Operations,* No. 2:07CV5, 2009 WL 689054 (N.D.W.Va. Mar. 9, 2009) (condemnor has no legal duty to engage in good faith negotiations and need only show it was unable to reach agreement regarding compensation); *Guardian Pipeline v. 295.49 Acres of Land,* No. 08–C–0028 *et seq.,* 2008 WL 1751358, at *18 (E.D.Wisc. Apr. 11, 2008) (finding no good faith requirement and noting that a "reasonable effort to reach agreement" is enough); *Guardian Pipeline v. 529.42 Acres of Land,* 210 F.Supp.2d 971 (N.D.Ill.2002).  This court concludes that these more recent decisions reflect a proper interpretation of the NGA § 717f(h).

The Court also finds that NGA §717f(h) does not incorporate these Ohio law requirements.  §717f(h) provides:

> The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated…

This plain statutory requirement to follow state law has been superseded by Rule 71.1.[11]  Every circuit to consider the issue has so concluded.[12]  Although the Supreme Court has not decided this issue in an NGA case, it has held that Rule 71.1 nullified similar conformity clauses in other federal condemnation statutes. *See Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 4 n. 2, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984) (noting that condemnation proceedings brought pursuant to 40 U.S.C. § 257 are no longer controlled by the state law conformity clause of § 257 because "[t]he adoption in 1951 of Rule 71A capped an effort to establish a uniform set of procedures governing all federal condemnation actions"); *United States v. 93.970 Acres of Land,* 360 U.S. 328, 333 n. 7, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959) (holding that "federal law was wholly applicable" to federal condemnation proceeding because the state law conformity clause of 50 U.S.C. § 171 "was clearly repealed by Rule 71A").

The Sixth Circuit has confirmed that condemnation under the NGA is a federal law matter.  In doing so, however, the Court also has ruled that the determination of how much

---

[11] Rule 71.1 was originally adopted as Rule 71A in 1951.  *See* Fed. R. Civ. P. 71.1, 2007 Amendment notes.

[12] *See e.g. E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 822 (4th Cir. 2004) ("Courts, including the district court here, agree that this state procedure requirement has been superseded by Rule 71A."); *N. Border Pipeline Co. v. 64.111 Acres of Land,* 344 F.3d 693 (7th Cir.2003) (concluding that Rule 71A supersedes §717f(h)); *All. Pipeline L.P. v. 4.360 Acres of Land, More or Less, in S/2 of Section 29, Twp. 163 N., Range 85 W., Renville Cty., N.D.,* 746 F.3d 362, 366 (8th Cir. 2014), *cert. denied sub nom. 4.360 Acres of Land, More or Less, in the S/2 of Section 29, Twp. 163 N., Range 85 W., Renville Cty., N. Dakota v. All. Pipeline L.P.,* 135 S. Ct. 245, 190 L. Ed. 2d 136 (2014) (finding that §717f(h)'s state law directive has been superseded by Rule 71.1); *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cty.,* 550 F.3d 770, 776 (9th Cir. 2008); *S. Natural Gas Co. v. Land, Cullman County,* 197 F.3d 1368, 1374 (11th Cir.1999) ("It is clear to us that Rule 71A was promulgated to override a number of confusing federal eminent domain practice and procedure provisions, such as that of 15 U.S.C. § 717f(h), and to provide a unified and coherent set of rules and procedures to be used in deciding federal eminent domain actions.").  The Eastern District of Tennessee has also found that federal condemnation proceedings under the NGA were governed by Rule 71A, not Tennessee law. *USG Pipeline Co. v. 1.74 Acres in Marion Cty., Tenn.*, 1 F. Supp. 2d 816, 827 (E.D. Tenn. 1998).

compensation is due requires recourse to state law. *Columbia Gas Transmission Company v. Easement Beneath 264.12 Acre Parcel*, 962 F.2d 1192 (1992) [hereinafter "*Arnholt*"] ("[A]lthough condemnation under the Natural Gas Act is a matter of federal law, § 717f(h) incorporates the law of the state in which the condemned property is located in determining the amount of compensation due."); *See also Rockies Exp. Pipeline LLC v. 4.895 Acres of Land, More or Less*, 734 F.3d 424, 429 (6th Cir. 2013) ("While condemnation under the Natural Gas Act is a federal matter, courts conducting such proceedings must apply 'the law of the state in which the condemned property is located in determining the amount of compensation due.'").

   *Arnohlt* supports the conclusion that §717f(h) governs condemnation, including pre-condemnation negotiations.  In *Arnholt*, the Sixth Circuit determined that state law was incorporated into §717f(h) of the NGA only with regard to "determining the amount of compensation due."  The *Arnholt* court found that condemnation case procedures, on the other hand, were governed by federal law.  §717f(h) specifically addresses pre-condemnation negotiations (e.g. "When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way…it may acquire the same by the exercise of the right of eminent domain.") Section §717f(h) requires a FERC certificate holder to attempt to acquire by contract or agree on compensation for an easement *before* pursuing eminent domain condemnation in the district court.  Thus, §717f(h) address pre-condemnation negotiations. Because the Sixth Circuit has determined that condemnation is an issue of federal law, Columbia was not also required to comply with Ohio eminent domain law in its pre-condemnation negotiations. *See e.g. Guardian Pipeline, L.L.C. v. 295.49 Acres of Land*, No. 08-C-0028, 2008

WL 1751358, at *14 (E.D. Wis. Apr. 11, 2008)(similarly determining that Wisconsin state law did not apply to pre-condemnation activities under the NGA).

The Medina Landowners rely largely on this Court's decision in *Columbia Gas Transmission, LLC v. Crawford*, 746 F.Supp.2d 905 (N.D. Ohio 2010) to support their argument that condemnation cannot take place until after the state law prerequisites of ORC §163.04 have been satisfied.  ECF Doc. No 798, Page ID# 1479-80, *Crawford* was also an NGA condemnation case.  Judge Gwin analyzed the issue of *who* was owed compensation and concluded it was closely related to the question of *how much* compensation was due.  *Id.* at 910.  Judge Gwin denied Columbia summary judgment on the condemnation issue because he found a disputed issue of fact existed concerning Columbia's compliance with §717f(h), which requires the FERC-holder to attempt to acquire by contract or agree on compensation with the "owner" of the property.  Initially, *Crawford* is distinguishable because Judge Gwin explicitly declined to reach the issue of whether the NGA required good faith negotiations.  746 F.Supp.2nd at 913 ("this Court need not reach a holding on the issue of good faith negotiation because the defendants add that they never received notice of the precise interests sought by the plaintiff.")  Additionally, to the extent *Crawford's* treatment of the issue of *to whom* compensation must be paid conflicts with *Arnholt's* holding that federal law governs *how* compensation is to be paid, this court is bound to follow Circuit Court law.

Lastly, the "amount of compensation due" under Ohio law does not include costs, attorney fees, or appraisals:

> We hold that the proper manner to determine the value of an underground gas storage easement was delineated by United States District Court Judge Dowd, Jr., when he instructed the commission which he had appointed under Fed.R.Civ.P. 71A(h). Judge Dowd's analysis is as follows:

"In determining just compensation for the easement, you shall consider fair market value. The fair market value is the fair and reasonable amount which could be attained in the open market at a voluntary sale. In this case, there are alternative methods of determining fair market value based upon your preliminary determinations, including whether there exists native natural gas in the Clinton formation under the condemned tract to the extent that its recovery would be economically justified.

"1. *Comparable Sales.* One method in determining fair market value would be to consider comparable sales of easements for the purpose of allowing the storage of natural gas in the Clinton formation. If no evidence is offered of such comparable sales, this method is not available to assist you in determining just compensation.

"2. *The Existence of Sufficient Natural Gas Allowing for the Commercial Recovery in Sale of the Natural Gas.* A second method of determining fair market value, and in turn just compensation, rests upon evidence offered by landowner that sufficient natural gas remains under the landowner tract so as to allow the commercial recovery and sale of that natural gas. If the landowner so proves, then in determining just compensation, you may assess the foreseeable net income flow from the property for its productive life reduced to a present value figure.

"In other words, in fixing just compensation, you would determine the probable revenues and costs for the production and sale of native natural gas from the condemned tract and reduce the net sales value by the interest the landowners will enjoy for an early, one time payment.

"3. *The Fair Market Value of the Storage Easement Based upon a Capitalization of Retail Income for the Right to Store the Gas.* If you do not find there exists commercially recoverable reserves of oil and gas, a third alternative method of finding fair market value, and in turn just compensation, involves determining the fair market value of the storage easement based upon a capitalization of the rental income for the right to store the gas. In so determining, you shall use the date of the filing of the condemnation as the starting point and the termination of the storage field as the ending date.

"Fair market value by a capitalization of the rental income is determined by multiplying the acreage rental by the comparable storage rights to arrive at the present worth of the future income stream. In applying this method, the fair market value of the storage easement is equated to a capital sum which, when invested as of the date of filing, would earn income equal to the comparable storage rentals for the future.

"4. *Depreciation in the Fair Market Value of the Condemned Tract as a **50 Whole by Reason of the Taking of the Storage Easement.* This alternative method of determining fair market value, and, in turn, just compensation, involves determining the difference in the fair market value of the entire condemned tract before and after the taking. This determination is accomplished by establishing the fair market value of the entire condemned tract before the taking and deducti[ng] the fair market value of the entire tract immediately after the taking. If this method is chosen to determine just compensation, the fair market value of the storage easement is equated to the difference, if any, between these before-and-after values of the entire condemned tract.

12

"5. *Mineral leases.* The existence of a lease for the production of native oil and gas from the property is not evidence of the existence of such oil and gas. However, you must award nominal damages to the holder of such a lease even if the presence of native oil and gas in paying quantities is not proven to a reasonable probability.

"6. *Viewpoint of value.* Just compensation is measured from the point of view of the landowner. The yardstick is what the landowner has lost, not what Columbia has gained. Therefore, you are not to consider the value of the storage easement to Columbia, nor may you consider any increase or increment in value by virtue of the activities of Columbia in reference to the gas storage field for which the easement is acquired. For example, if there is, within the storage easement, some amount of native oil and gas, but not in paying quantities, so that they had no effect on the market value of the subject tract on the date of taking, you would not take native oil and gas into account."

*Columbia Gas Transm. Corp. v. An Exclusive Nat. Gas Storage Easement*, 1993-Ohio-105, 67 Ohio St. 3d 463, 463, 620 N.E.2d 48, 49.  The Medina Landowners' attempt to require additional costs to be included in the calculation of just compensation conflicts with the Ohio Supreme Court's determination and cannot be permitted without ignoring *Arnholt*, something this court is not free to do.

In sum, the Medina Landowner's argument that Columbia was required to follow Ohio law's pre-condemnation proceedings is not well-taken.  Columbia has shown that it is entitled to condemnation by eminent domain under the NGA and Rule 71.1.

### B.  Whether Columbia is Entitled to Immediate Possession

Having determined that Columbia has established a substantive right to condemn gas storage easements under the Medina Landowners' properties, the Court must next determine whether Columbia has the right to immediate possession of the easements.  Columbia seeks partial summary judgment on the issue; defendants oppose that claim, pointing out that nothing in the NGA or in Rule 71.1 authorizes a "quick take."

Defendants are right.  Neither the NGA nor Rule 71.1 provides for immediate possession.[13]  But, in Columbia's favor, many courts have held that when a FERC certificate holder establishes a substantive right to condemn a property under the NGA, courts may exercise inherent equitable powers to grant immediate possession through the issuance of a preliminary injunction.  *See, e.g., East Tennessee Natural Gas Co. v. Sage,* 361 F.3d 808, 828 (4th Cir.2004); *N. Natural Gas. Co. v. Approximately 9117.53 acres in Pratt, Kingman, and Reno Cntys., Kansas,* No. 10–1232–MLB, 2012 WL 859728, at *4–*7 (D. Kansas Mar. 13, 2012); *Gulf Crossing Pipeline Co. LLC v. 7.50 Acres,* No. 4:8CV178, 2008 WL 2774534, at *5 n. 1 (E.D.Tx. July 8, 2008) (collecting cases); *Humphries v. Williams Natural Gas Co.,* 48 F.Supp.2d 1276, 1280 (D.Kan.1999)("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the NGA]."); *USG Pipeline Co. v. 1.74 Acres in Marion Cnty., Tennessee,* 1 F.Supp.2d 816, 825–26 (E.D.Tenn.1998); *Tennessee Gas Pipeline Co. v. New England Power, C.T.C., Inc.,* 6 F.Supp.2d 102, 104 (D.Mass.1998); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Ill.2002)(immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied).  Although the Sixth Circuit has not addressed the issue, the Southern District of Ohio has previously expressed similar reasoning to grant immediate possession under the NGA. *Texas E. Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-CV-2650, 2015 WL 152680, at *4 (S.D. Ohio Jan. 12, 2015); *Rockies Exp.*

---

[13] *See E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 822 (4th Cir. 2004) (finding that the Natural Gas Act, like most statutes giving condemnation authority to government officials or private concerns, contains no provision for quick-take or immediate possession.) *See Kirby Forest Ind., Inc. v. United States,* 467 U.S. 1, 3–4, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984) (determining that straight condemnation actions under Rule 71.1, the government takes possession of the land *following* an order of condemnation and a trial determining just compensation. )

*Pipeline, LLC v. 4.895 Acres of Land,* No. 2:08–CV–554, 2008 WL 4758688, at \*2, \*5 (S.D.Ohio Oct.27, 2008).

The Court need not decide whether it has the power to issue injunctive relief at this stage because Columbia has not pleaded an injunctive relief claim.[14]  Columbia bases its entitlement to eminent domain on the NGA and Rule 71.1.  Rule 71.1 governs "straight condemnation" proceedings, including those under the NGA.  40 U.S.C. §3113.  Under straight condemnation, the taking or vesting of title to the property does not occur until after payment for just compensation.  See 40 U.S.C. § 3113; *Kirby Forest Ind., Inc. v. United States*, 467 U.S. 1, 3-4, 12 (1984)("The Government's capacity to withdraw from the proceeding [prior to payment of just compensation] would be difficult to explain if a taking were effectuated prior to tendering of payment.")  Therefore, unless injunctive relief is requested and granted, Columbia has no entitlement to immediate possession of the easements.  Thus, Columbia's request for an order recognizing its right to immediate possession of the easements is denied.[15]

---

[14] Injunctive relief pursuant to FRCP 56 requires "notice to the adverse party" of the injunctive request, "security in an amount the court considers proper."  The party seeking injunctive relief also has the burden to show that the balance of factors for reviewing injunctive relief requests weigh in their favor (i.e. "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir.2004) (*quoting Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir.1997) (Citations omitted))

[15] The Court recognizes that although it has denied Columbia's request for summary judgment as to its immediate legal possession of the easements, Columbia's representations in this case make it evident that Columbia took possession of the gas storage cavities long ago.  The legality and impact of that pre-condemnation possession is directly at issue in the *Baatz* case 1:14-cv-00505, currently pending before the Court.

**VI.** **Conclusion**

Columbia's Motion for Partial Summary Judgment is GRANTED IN PART.  Columbia is granted easements for the underground storage of natural gas within the geographic area encompassing defendants' properties, subject to the creation of a suitable recordable instrument similar to the document attached hereto as Appendix A that may be filed in the office of the Medina County Recorder.  The court will conduct proceedings to determine the amount of just compensation Columbia must pay defendants.  Columbia's request for an order recognizing a right to immediate possession of those easements is DENIED.

IT IS SO ORDERED.

Dated: December 22, 2016

Thomas M. Parker
United States Magistrate Judge

16